Jules Dudoit *v.* Thomas Spencer.

January 9, 1862.

# SUPREME COURT—IN EQUITY.

### JULES DUDOIT *vs.* THOMAS SPENCER.

WHERE parties had transacted business with each other in a loose manner, rendering it difficult for the Court to measure the amount of pecuniary damage, sustained by the party invoking its aid, the Court, sitting as a Court of Equity with the consent of the parties, adopted the principle of *cy près* in assessing the damages to be awarded.

A party complainant having retained accounts furnished him by the defendant, for a great length of time, without objection as to their correctness, having had opportunity, was held to have waived the right to make such objections, and said acts were regarded as conclusive against him.

The Court per Justice ROBERTSON:

The complainant in this cause alleges in his bill, in substance as follows, viz : That in the autumn of the year 1858, he was the sole registered owner of the Hawaiian schooner "Alice," and entered into an agreement with Thomas Spencer of Honolulu, the defendant, to take an interest in said schooner, and to fit her out for a whaling voyage, under the control and management of the defendant, who had her repaired and fitted out, and dispatched her to the Coast of California about the month of November, 1858, under the command of Rhodes Spencer ; that after her departure, defendant furnished the complainant with an account, by which it was made to appear that said schooner and outfit had cost $9,168 52, (valuing the vessel before her repair at $2,000,) and by which account defendant takes to himself six-sevenths interest in said schooner and outfits, and allows the complainant one-seventh interest therein, but which account contains overcharges in items for supplies ; that the schooner returned to Honolulu in the spring of 1859, when the defendant disposed of the oil procured by her, and having furnished her with the requisite supplies, dispatched her on a cruise to the North, where she whaled during the summer, but did not return to these Islands, her then master, Joseph Spencer, having transshipped her catchings to the bark "Florence," owned by defendant, which brought the same to Honolulu, but as to how much such catchings amounted to, or how the same was disposed of, the complainant has no means of knowing ; that in the spring of 1860, defendant forwarded a master, officers, crew and supplies to the schooner, to enable her to whale during the summer of that year, with the assent of complainant, when she had a very successful season, having taken ten whales, which were cut in by her crew, the greater part of the blubber, however, being carried on board of the "Florence," and there tried out and put into casks in common with the oil procured by her boats ; and that, in particular, one large whale secured by the boats of the schooner was taken alongside the "Florence," cut in and mixed with her catchings ; that the schooner was of sufficient capacity, and furnished with sufficient means, for trying out and stowing away her own catchings, and therefore the trying out and stowing away of her oil on board the "Florence,"

was unjust towards the schooner, and the complainant as part owner ; that the " Florence " returned to Honolulu about the 26th October, 1860, when defendant disposed of the oil and bone brought by her, including that procured by the schooner ; that the " Alice " had again been left at the North, in Shantar Bay, contrary to the desire and expressed wish of the complainant, notwithstanding that all the moveable property on board of her had been stolen by the Indians the previous winter, and although said schooner was in a condition to have made the voyage back to Honolulu in the early part of the fall season ; that the conduct of the defendant in taking and stowing the catchings of the schooner on board the bark " Florence," was unjust towards the complainant, who never had any connection with said bark, and denies the right of the defendant to involve the catchings and accounts of the schooner with those of the bark, but claims that the same should be kept separate, as regards the summer season of 1860, when the catch of the schooner was large, in like manner as was done with those of the two previous cruises, when her catch was comparatively small ; that complainant has been unable to procure from defendant any account of the proceeds of the whaling cruise of 1860, and has also been damnified by the " Alice " having been left for another winter in the northern seas, against his express protest ; and the complainant prays that an account may be taken of the proceeds of the catchings of the " Alice," and of the disbursements made by defendant, and that he may have compensation for the damage he has sustained by the detention of the " Alice " in Shantar Bay, and the appropriation of his share of that vessel by the defendant, without his consent.

The defendant, in his answer, admits that he entered into an agreement with the complainant, in the fall of the year 1858, to fit out the " Alice " for a whaling voyage under his management, in pursuance of which agreement said vessel was fitted out, and sent to the Coast of California about November, 1858, and that after her sailing he furnished to complainant an account of disbursements and supplies, which he avers to be correct and containing no overcharges. Defendant further admits that the " Alice " returned in the early part of 1859, when he disposed of her catchings, and that she was refitted and dispatched to

the North on a whaling cruise, from which she did not return, her catchings being transhipped on board of the "Florence," which brought the same to Honolulu; and avers that complainant has been shown the account sales of such catchings as furnished the defendant, who has also rendered an account current to the complainant, giving him credit for his net interest. Defendant admits, also, that, in the spring of 1860, he forwarded a master, officers, crew and supplies for the "Alice," with the concurrence of the complainant, but that the crew were shipped on the articles of the "Florence," and furnished with provisions belonging to her, with the understanding that the "Alice" was to be used as a tender to the "Florence;" and he avers further, that the men employed on the "Alice," during the season, were only sufficient to man her boats for whaling, at which they were constantly employed, and it was impossible to try out the "Alice's" blubber on board of that vessel, wherefore it was taken on board the "Florence" to be tried out and put in casks, that vessel being supplied with extra men for that purpose. Defendant further admits that the "Alice" had again been left in Shantar Bay, but avers that she was of necessity abandoned, being unseaworthy and incapable of performing the voyage back to Honolulu, after the close of the whaling season. Defendant avers an agreement with complainant that the "Alice" should be used as a tender to the "Florence," during the summer of 1860, and that he is ready to allow, for the services of the "Alice," such proportions of the catchings during that season as may be just, so soon as the same are sold and accounted for, which had not been done when the suit was commenced. Defendant denies that complainant has ever complained of the leaving of the "Alice" at the North during the winter of 1859–60, but has 'always expressed himself satisfied with the defendant's management, up to the return of the "Florence" in the fall of 1860, when he complained because the "Alice" had not been brought back. And defendant avers that he instructed the master of the "Florence," if he should find the "Alice" in a condition to make the passage to Honolulu, to man her and send her down, but that, as he is informed and believes, she was unfit to make such passage, and therefore left in Shanter Bay.

Jules Dudoit *v.* Thomas Spencer.

Complainant filed a replication, in which he denies that there was any understanding or agreement between the parties, in the spring of 1860, that the "Alice" was to be used as a tender to the bark "Florence ;" or that the "Alice" was abandoned or left in Shantar Bay, as unseaworthy for a voyage to Honolulu ; and traverses several other less important averments contained in defendant's answer.

This case, so far as concerns the joint adventure prosecuted by the complainant and defendant, during the winter of 1858–9, and the summer of 1859, would seem to be a plain one. The complainant being owner of a schooner called the "Alice," lying in the port of Honolulu, entered into an agreement with the defendant, a ship chandler interested in the whaling business, whereby the latter was to prepare, fit out, and supply the "Alice" for sea, as a whaler, on joint account, the vessel being valued in the hands of complainant at two thousand dollars. In accordance with this agreement, the defendant had the "Alice" repaired, fitted, victualled, and manned for whaling, and dispatched her on a cruise to the coast of California, under the command of Rhodes G. Spencer. Within a reasonable time after the vessel had sailed, and in accordance with what is believed to be the usage in that business, the defendant rendered an account to the complainant, as part owner in the enterprise, showing the expenses and disbursements incurred in getting the "Alice" to sea. That account exhibits the entire outlay as $9,168 52, including the valuation put upon the vessel, and allots to complainant one-seventh share, as his interest, the difference between $2,000, the value of the vessel, and $1,309 79, the exact one-seventh part of $9,168 52, consisting of an amount previously due from complainant to defendant. The complainant charges, in his bill, that this account is incorrect, containing numerous overcharges in the items for supplies ; and he has introduced testimony by several disinterested witnesses, tending to show, certainly, that several important articles of supply are debited to the adventure at unusally high prices, swelling the aggregate amount, and tending to reduce the proportional share which should be allotted to the complainant. But it is argued on the part of the defendant, that it is now too late for the complainant to make any objections to this ac-

count, and that if he had objections to make he was bound to have made them immediately, or at least within a reasonable time after being furnished with the account. It appears by the evidence that the account was rendered to complainant in the month of February, 1859, and there is no proof that he raised any objections to it as being incorrect, or containing overcharges, till the fall of the year 1860, after the return of the bark "Florence" from her second cruise to the North. The same is true with respect to the second account rendered by defendant, which exhibits the outlay incurred between the return of the vessel from the coast of California, and her departure for the North, and also the result of the joint adventure up to the 6th of Jan., 1860, at which date the complainant had credit for $117 43, as his share of the net proceeds, after the catchings of the "Alice" for the summer season of 1859, in addition to those of the previous winter season, had been realized on. We think the position taken for the defense is a sound one. It was so held by this Court in the case of P. S. Wilcox and F. L. Hanks *vs.* J. F. B. Marshall. (Hawaiian Rep., Vol. 2, p. 296.) The complainant having retained these accounts in his possession for so great a length of time, without having made any objections to the amounts charged for supplies, or having questioned the correctness of the net proceeds as exhibited by the account current, he must be held to have waived the right to make such objections, and the accounts must now be regarded as conclusive. But this will not prevent the correction of a clerical error which appears in the first account, consisting of the item of $118 50, for potatoes, twice debited.

But that part of the case which arises from the transactions which transpired subsequent to the close of the whaling season of 1859, is by no means plain ; on the contrary it is perplexing and difficult to adjust satisfactorily. In the first place, when the season of 1859 closed, the oil and bone procured by the "Alice" was transhipped to the defendant's bark, the "Florence," for transportation to Honolulu, and the "Alice" was left in Shantar Bay for the winter, without the complainant's knowledge or consent. This was a deviation from the course of operation agreed upon by the parties, of which no satisfactory explanation appears, and for which no sufficient justification is

shown. Had the schooner returned to Honolulu, she might, so far as appears before us, have been again refitted and dispatched on a cruise to the Coast of California, where she met with a successful season the previous winter; or she might have been otherwise profitably employed, or disposed of, for the interest of those concerned. The complainant now claims compensation for the loss resulting from the detention of the vessel at the North through the winter, and that compensation can only be given in the shape of pecuniary damages. An action at law would seem to be the most proper mode of seeking redress in this particular, and also as regards some other parts of the complainant's demands. But at the request of the parties, the Court has consented, although sitting as a Court of Equity, to assess and award damages, as would be done by a jury at common law, wherever we may consider the complainant entitled to redress in that form. His claim for compensation on this branch of the case seems just and reasonable, and we now award him the sum of one hundred and fifty dollars damages.

The next subject for consideration is the complainant's demand for an account of the "Alice's" catchings during the summer season of 1860. He claims that she shall be regarded as having operated as an independent vessel during that season as she did previously; while on the part of defendant it is claimed that she acted during that season as a tender to the "Florence," in pursuance of an understanding between the parties. Clearly the burden rests upon the defendant of proving any new agreement or understanding to that effect, and we must presume that the original agreement still remained in force until the contrary is shown. This the defendant has not done to the satisfaction of the Court. There is no evidence of an express agreement with complainant, that the "Alice" should be used as a tender, while the defendant's book-keeper testifies that, even upon his own books, no account was ever opened with the "Alice" and her owners, dealing with her in any other capacity than that of an independent whaler, and Joseph R. Spencer, a brother of the defendant, was engaged as her master for the season, for a certain share of her individual catchings. The complainant is therefore justly entitled to the account for which he asks, but if we should grant a decree to

that effect it would be impossible for the defendant to comply with it. He has, by his own acts, placed it beyond his power to do so. When the vessel was left at Shantar Bay, in the fall of 1859, she had on board several boats, her sails, and a considerable amount of stores, being left in this condition with the hope, no doubt, that she would be thus found comparatively ready to resume whaling the following summer. Of the vessel and the property left on board of her, the complainant was part owner, but it is now impossible to ascertain the precise value thereof. During the winter a quantity of stores and materials were stolen from the vessel by the Indians, but how much does not appear with certainty. In the spring of 1860, the officers and seamen intended for the "Alice" went forward on the bark "Florence," upon whose articles they were all shipped, with the exception of the master. After the "Florence" arrived at Shantar Bay, two boats from her succeeded in reaching the place where the "Alice" lay, and in due time that vessel was got out into deep water and prepared for whaling. Men were sent from the "Florence" to navigate the "Alice," and during the season she whaled with three boats, under command of Joseph R. Spencer. Some of her officers and crew were changed from time to time by direction of the master of the "Florence," which vessel also supplied the schooner with provisions and other necessaries, of which no account appears to have been kept. The greater part of the whales captured during the season, were secured by the boats which were lowered from the "Alice," a considerable part were cut in by her men, and one whale was tried out on board of her, but all the oil was put into casks on board of the "Florence." In short, the "Alice" was used as a tender to the "Florence," in violation of the original agreement, and it would be utterly impossible to adjust the accounts between the parties now, upon the basis of treating the "Alice" as an independent whaler for the season of 1860. We must accept the facts as they are, and under the stipulation of the parties already referred to, award such compensation to the complainant as may seem reasonable. The entire catchings of that season, with the exception of 819 gallons of oil sold in Honolulu for $368 55, were forwarded to New Bedford for sale, and the net proceeds of the shipment, as

evidenced by the account sales of Messrs. Swift and Allen, amounted to $17,301 35, making the whole proceeds of the cruise $17,669 90. After carefully weighing all the circumstances of the case, we award to the complainant the sum of seven hundred and fifty dollars as compensation under this branch of the case.

The last question presented for settlement is the claim of complainant for damages, for the wrongful conversion of his share of the " Alice," by the defendant, in the fall of 1860. It appears that after the close of the whaling season of 1860, the schooner was again left in Shantar Bay, for the winter, without complainant's knowledge or consent. After having used the schooner as a tender to the " Florence," during the season, the defendant's agents, instead of bringing the " Alice " back to Honolulu, hauled her up and secured her aground, on the 14th of September, at the same time burying on shore some provisions and sails appertaining to her, with the intention, apparently, of resuming the use of her again in the summer of 1861. It is averred on the part of the defendant, that the " Alice " was abandoned as being unseaworthy for a passage to Honolulu, after the close of the whaling season. But this is not proven to our satisfaction. On the contrary, we think the weight of evidence is in favor of her capability to have made the passage down, with an ordinary degree of safety, provided she had left the Ochotsk Sea early, as became a vessel of her class. We regard the acts of the defendant's agents as amounting clearly to an appropriation of the complainant's share of the vessel, and he is therefore justly entitled to the damages he claims. We award him as such damages the sum of three hundred dollars, with interest thereon from the 14th September, 1860.

Where parties transact business in the loose manner in which it has been done in this instance, it is impossible for a Court or jury to measure the pecuniary consequences with a degree of precision satisfactory even to themselves. But we have exercised our judgment deliberately, carefully examining and weighing all the facts of the case before us, and we deem it unnecessary to give a detailed exposition of the basis on which we have assessed the damages awarded to the complainant, under the several branches of the case.

The master will ascertain the exact amount due the complainant, and a decree will be entered accordingly, with costs.

J. Montgomery and C. C. Harris, Esqs., for complainant.

A. B. Bates, Esq., for respondent.